IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

NTCH-WEST TENN, INC.,

    Plaintiff,

v.                                                    No. 1:11-cv-01169-JDB-egb

ZTE USA, INC.,

    Defendant.

---

ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION
_____

Before the Court is the objection of Plaintiff, NTCH-West Tenn., Inc.'s ("NTCH"), to the Magistrate Judge's report and recommendation (Docket Entry ("D.E.") 93), recommending that the Court grant Defendant, ZTE-USA, Inc.'s ("ZTE"), motion to compel arbitration. Upon review of Plaintiff's objections, the report and recommendation is ACCEPTED, and the Defendant's motion to compel arbitration is GRANTED.

I.      Factual and Procedural Background

On September 21, 2006, PTA-FLA, Inc., an affiliate of NTCH located in Florida, entered into a Master Supply Agreement ("MSA") with ZTE wherein PTA-FLA would purchase cellular network equipment from Defendant for use in Jacksonville, Florida. (Compl. at ¶ 8.) During installation, a number of compatibility issues arose with the equipment in contravention to the MSA's guarantees. (Id. at ¶¶ 11-12.) ZTE assured PTF-FLA that it would work to resolve these problems but a solution was never reached. (Id. at ¶¶ 13-14.)

1

In 2008, PTA-FLA sold its Jacksonville network to Metro PCS, which did not purchase the ZTE equipment. (Id. at ¶ 15.) Metro PCS requested that the equipment be removed from its grid and Defendant agreed to move it from Jacksonville to Jackson, TN for use by the Plaintiff. (Id. at ¶ 16.) NTCH paid a $150,000 "integration service fee" to the Defendant for its transfer and installation with ZTE assuring NTCH that the equipment would function properly in Tennessee. (Id. at ¶¶ 17-18.) However, after it was installed in November of 2009, NTCH continued to experience compatibility and configuration problems which Defendant was never fully able to resolve. (Id. ¶¶ 19-22.) As a result, Plaintiff was forced to abandon the use of ZTE's product and replace the equipment at significant expense. (Id. at ¶ 35.)

On April 25, 2011, Plaintiff filed a complaint in the Chancery Court of Madison County, Tennessee against ZTE which it removed to this Court based on diversity of citizenship, 28 U.S.C. § 1332. (D.E. 1.) On June 13, 2011, ZTE filed its first Motion to Compel Arbitration, which the Magistrate Judge recommended granting. (D.E. 8, 22.) NTCH filed objections, with which the Court agreed, finding that the motion should be denied. (D.E. 45.) Defendant appealed that ruling to the Sixth Circuit Court of Appeals, which remanded the issue of arbitrability to this Court pending the outcome of the instant motion. (D.E. 95.) In the time period between the issuance of the Magistrate Judge's report and the Court's rejection of Defendant's first arbitration motion, NTCH entered into a new agreement to arbitrate. (Demand for Arbitration, D.E. 47-10).

On April 20, 2012, Defendant filed a second motion to compel arbitration based on this new agreement, to which the Plaintiff opposed. (D.E. 49.) NTCH claimed that Defendant repudiated the agreement by withdrawing the claims against ZTE Corp. (ZTE's parent corporation) from the arbitration, and could therefore not enforce the arbitration agreement.

2

(D.E. 51.) Additionally, Plaintiff moved for a preliminary injunction requesting that the Court relieve it from participating in arbitration of its claims against the Defendant. (D.E. 77.) Both motions were referred to the Magistrate Judge who on October 31, 2012, recommended that Defendant's second motion to compel arbitration be granted. On November 13, NTCH objected to the report and the Defendant responded. (D.E. 94.)

II.     Standard of Review

According to 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge ruling on an objection to a magistrate judge's recommendation must apply a de novo standard of review. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court has reviewed the Plaintiff's objections and addresses them below.

III.    Analysis

The heart of Plaintiff's objection is whether or not the issue of arbitrability was submitted to the arbitrator, and if so whether he ruled on the matter. NTCH contends that the arbitrator reserved the issue for this Court to decide and consequently, submits that its claims against ZTE are not subject to any arbitration agreement. Plaintiff also argues that Defendant repudiated the agreement, or alternatively, that there was no meeting of the minds between the parties as to the agreement. The Court concludes that the arbitrator did rule on the matter of arbitrability which ruling is subject to deferential treatment. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923, 131 L. Ed. 2d 985 (1995) ("[T]he court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances.").

3

While it is unnecessary to evaluate Plaintiff's substantive arguments as the Court defers to the arbitrator on the issue, the Court also finds that they are without merit.

In its objection to the Magistrate Judge's report, Plaintiff admits that it entered into an agreement with Defendant to submit its claims to binding arbitration. (D.E. 94, p. 2.) ("Plaintiff submitted its claims to arbitration voluntarily pursuant to an agreement (the 'Arbitration Agreement') it had reached with Defendant."); (see also D.E. 51, p. 7.) ("In December of 2011, NTCH-TN did enter into a new agreement with ZTE USA and ZTE Corp. to submit all claims between the parties to binding arbitration.") Since entering into the agreement, both NTCH and ZTE USA have actively participated in arbitration, with Plaintiff voluntarily submitting a number of issues to the arbitrator for determination. (Plaintiff's Demand for Arbitration, D.E. 47-10). Among these is whether the arbitrator was permitted to rule on the question of arbitrability of the claims presented, an issue which Plaintiff asserted and argued in support of on multiple occasions. (See D.E. 76-1) ("Claimants will address the following issues…1) The Tribunal's Power to Decide Arbitrability Questions in This Case"); (D.E. 76-2.) ("The Arbitrator Has the Authority to Determine Arbitrability.") NTCH also submitted several supplemental questions related to the arbitrability of its claims, including whether ZTE Corp. had repudiated the agreement and whether the parties had a meeting of the minds when contracting the arbitration agreement - the same issues the Plaintiff now asserts in the instant objection to support its position that its claims are not arbitrable. While ZTE initially contested the ability of the arbitrator to determine arbitrability, it ultimately acquiesced and allowed the arbitrator to rule on the issue. (D.E. 76-2.) ("Respondents now correctly acknowledge that the arbitrator may decide arbitrability, as they appear to have abandoned their argument to the contrary."). This conduct clearly signaled that the parties intended for the arbitrator to rule on the matter, Vic Wertz

Distrib. Co. v. Teamsters Local 1038, 898 F.2d 1136, 1140 (6th Cir. 1990) ("[a]greement to have the arbitrator decide the issue of arbitrability 'may be implied from the conduct of the parties in the arbitration setting'"), and as such, the arbitrator found that the claims between NTCH and ZTE were arbitrable. (D.E. 70-1) ("I determine that the arbitration includes the claims, counterclaims, and defenses that may or will exist in the Tennessee lawsuit until and unless a court order removes that matter from the arbitration.").

After a complete review of the record, the question of arbitrability was undoubtedly submitted to the arbitrator and he ruled accordingly. While this type of determination is generally reserved for the courts, "if the parties 'clearly and unmistakably' submit the issue [of arbitrability] to the arbitrator 'without reservation,' then the parties have waived their right to have a court make the decision." Printing Serv. Co. v. Graphic Commc'n Conference of the Intern. Broth. Of Teamsters, Local 508 of Council 3, No. 11-3288, 2012 WL 3121266, at *2 (6th Cir. Aug. 2, 2012) (citing Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am., 440 F.3d 809, 813 (6th Cir. 2006). Here, because NTCH requested that the arbitrator consider whether the Tennessee claims were arbitrable, it would not be entitled to a de novo review by the Court. See Vic Wertz. 898 F.2d at 1140 ("Because the parties clearly and unmistakably submitted the issue of arbitrability to the arbitrator without reservation, we will review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's ruling on the merits."); see also Cleveland Elec., 440 F.3d at 813 ("The company waived its right to have the court decide the arbitrability question by participating in the arbitration proceedings."). Rather, "the arbitrator's decision is entitled to a deferential review." Id. at 814 ("The arbitrator's decision will not be disturbed unless it fails to draw its essence from the [agreement]."); see also First Options of Chicago 514 U.S. at 943, 115 S. Ct. at

1923. Therefore, as the arbitrator's ruling stems from a reasonable interpretation of the arbitration agreement, the Court defers to his decision, that unless this Court reserved the matter for itself, which it has not done, he may arbitrate all claims from the Tennessee lawsuit.

Plaintiff claims that the arbitrator reserved the issue of arbitrability for the Court; however, a plain reading of the ruling suggests otherwise. Had he intended to reserve the issue, he would not have stated that he was allowing the arbitration to move forward. The question of arbitrability is a threshold matter, and it would be inconsistent to declare that the arbitration proceed without first ruling on it. When the arbitrator stated that "the arbitration includes the claims, counterclaims, and defenses that may or will exist in the Tennessee lawsuit," (D.E. 70-1.) he was offering his determination on arbitrability. The statement "unless a court order removes that matter from the arbitration" (Id.) was simply qualifying language acknowledging that the Court had the ultimate say on the issue.

While not necessary to the ultimate decision, the Court will also address the Plaintiff's arguments regarding repudiation and lack of mutual assent. With respect to the repudiation argument, there is no evidence that ZTE, the defendant in this case, has renounced or indicated an intention to dishonor its obligations under the arbitration agreement. ZTE has been, and continues to be, a full and active participant in the arbitration proceedings. (See, e.g., D.E. 49-1-16.) ZTE Corp. is not a party to the instant action, and the fact that ZTE asserted a legal defense in arbitration to have those claims against ZTE Corp. removed does not amount to repudiation. See Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers Int'l, AFL-CIO, 370 U.S. 254, 262 n. 10, 82 S.Ct. 1346, 1351 8 L.Ed.2d 474 (1962) (quoting 6 Corbin, Contracts § 1443 (1961 Supp., n. 34, pp. 192-193) ("One who flatly repudiates the provision for arbitration itself should have no right to the stay of a court action brought by the other party. But

6

mere nonperformance, even though unjustified, is not per se a 'repudiation.' One who asserts in good faith that the facts justify him in refusing performance of other provisions in the contract should not thereby lose his right to arbitration that he would otherwise have had.")

The Court also finds Plaintiff's argument that there was no "meeting of the minds" to be unpersuasive. NTCH contends that had they known they would not be permitted to include their claims against ZTE Corp. in arbitration, they would not have agreed to arbitrate any of its claims. In Tennessee, a court's assessment of mutual assent is through an objective analysis of the party's expressions. Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005) (citing T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002). Here, it is clear from the record that the arbitration agreement was reached in order to consolidate a number of claims "pending" in courts nationwide by Plaintiff and its affiliates against ZTE. (D.E. 65-1, ¶ 15-16.) There is nothing in the agreement or the communications leading up to it suggesting that ZTE intended to allow claims against its parent corporation, which had not yet been filed in any court, to be arbitrated. NTCH cites Cone Oil Co., Inc. v. Green, 669 S.W.2d 662 (Tenn. Ct. App. 1983), for the proposition that "a secret, unexpressed intent of one party to a contract is not binding upon the other party who has no notice of the secret intent." Id. at 664. Plaintiff argues that ZTE's intent not to have those claims against ZTE Corp. arbitrated was undisclosed and therefore should not be binding. However, from a review of the agreement and negotiations, there is no evidence to indicate that Defendants harbored such an intent. Plaintiff cannot claim that there was no "meeting of the minds" simply because it failed to include specific and clear language in the arbitration agreement subjecting any non-pending claims against ZTE Corp. to arbitration. Here the contract was reached without fraud, undue influence, or violations of public policy and must therefore be enforced based on an

7

objective reading of the party's manifestations. Staubach, 160 S.W.3d at 524 ("A contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.") (internal citations omitted).

Accordingly, the Court finds that the arbitrator issued a decision on the arbitrability of Plaintiff's claims and defers to its judgment. Furthermore, the Court finds Plaintiff's arguments regarding revocation or mutual assent unpersuasive. Therefore, the Magistrate Judge's report and recommendation is ACCEPTED and ZTE's motion to compel arbitration is GRANTED.

IT IS SO ORDERED this 22nd day of January, 2013.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE